United States District Court
for the
Southern District of Florida

| United States of America, Plaintiff, | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | Criminal Case No. |
|  | ) | 22-20162-CR-Scola |
| Carlos Miguel Paulino Marte and | ) |  |
| Carlos Reynaldo Almonte Almonte, | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## Order Denying Motion to Dismiss

This matter is before the Court on the Defendants' joint motion to dismiss the indictment. (Def.'s Mot., ECF No. 22.)[1] The Government responded, opposing the motion. (Gov't's Resp., ECF No. 27.) Neither Defendant replied. After careful consideration of the briefs, the record, and the relevant legal authorities, the Court **denies** the motion. (**ECF No. 22**.)

### 1. Background

In April 2022, 170 nautical miles south of the Dominican Republic on the high seas, United States Coast Guard officers intercepted a go-fast vessel, suspected of smuggling drugs, carrying the two Defendants. The boat had no visible indicia of nationality. The Coast Guard obtained authorization to conduct a right of visit boarding. Upon boarding, Coast Guard members recovered twelve bales containing approximately 286 kilograms of suspected ccocaine.

Paulino Marte identified himself as master of the vessel and claimed its Colombian nationality. The Government says that, upon being contacted by the Coast Guard, the Government of Colombia neither confirmed nor denied the registration of the vessel. Based on this, the Coast Guard treated the vessel as being without nationality and, thus, subject to the jurisdiction of the United States.

The boarding team processed two field tests on the contraband which yielded positive results for cocaine.

On April 20, 2022, the Defendants were charged, via indictment, under the Maritime Drug Law Enforcement Act, with conspiracy to distribute five kilograms or more of cocaine while on board a vessel subject to the United

---

[1] Defendants Juan Pablo Medina, Jocelyn Altidor, and Efren Felipe Perez-Zapata have all adopted the motion to dismiss. (ECF Nos. 22, 26, 28.)

States' jurisdiction, in violation of 46 U.S.C. §§ 70506(b) and 70503(a)(1) and for possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1). (ECF No. 1.) The Defendants now seek dismissal of both counts in the indictment against them, arguing (1) the United States lacks jurisdiction because (A) the vessel was not properly deemed stateless; and (B) § 70502(d)(1)(c) is unconstitutional.

### 2. Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." *See* Fed. R. Crim. P. 12(b)(1). Moreover, a "motion that the court lacks jurisdiction may be made at any time while the case is pending." *See* Fed. R. Crim. P. 12(b)(2).

An indictment may be dismissed "only if there is an 'infirmity of law in the prosecution.'" *U.S. v. Belcher*, 927 F.2d 1182, 1185 (11th Cir. 1991) (quoting *U.S. v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)). Among the grounds upon which a defendant may challenge an indictment are a "failure to state an offense, lack of jurisdiction, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct." *United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012), *aff'd and remanded,* 571 U.S. 320 (2014). When evaluating a motion to dismiss, courts will view the allegations of the indictment as true. *Torkington*, 812 F.2d at 1354. Accordingly, "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *Id.*

### 3. Analysis
### A. Determination of Statelessness

The Defendants first argue that the indictment should be dismissed because the Government cannot establish the United States' jurisdiction by even a preponderance of the evidence, never mind beyond a reasonable doubt. In making their argument, the Defendants complain that it is unclear "whether the Coast Guard ever even made a direct inquiry with the Colombian government, [and] '[m]ere silence in the absence of a request for information supports no inference at all." (Defs.' Mot. at 4 (quoting *United States v. Prado*, 933 F.3d 121, 131 (2d Cir. 2019).) Plus, say the Defendants, "even if the Coast Guard did make an inquiry with the Colombian government for verification of nationality, it still must give the claimed nation of registry a reasonable opportunity to 'affirmatively and unequivocally assert that the vessel is of its

nationality.'" (Defs.' Mot. at 4 (quoting 46 U.S.C. § 70502(d)(1)(C).) The Court finds the Defendants' premise flawed.

The Government proffers a certification from the Department of State indicating that "the master [of the vessel] made a verbal claim of Colombian nationality for the vessel  .  .  .  [and] the Government of the United States requested that the Government of the Republic of Colombia confirm or deny the vessel's registry." (ECF No. 27-2.) That same certification says that "the Government of the Republic of Colombia replied that it could neither confirm nor deny the vessel's registry or nationality." (*Id.*) The "response of a foreign nation to a claim of registry under paragraph (1)(a) . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2). The Defendants do not argue that these allegations, if true, fail to establish jurisdiction under § 70502(d)(1)(C).

Instead, they appear to question the veracity of the allegations themselves. In doing so, however, the Defendants interpose no contrary facts, instead supplying only unsupported argument that they believe it's "unclear whether the Coast Guard even made a direct inquiry with the Colombian government," and that they believe "there is nothing in the record or in discovery—and apparently nothing presented to the grand jury—to suggest that the Colombia government declined an opportunity to affirmatively and unequivocally assert that the vessel is of its nationality." (Defs.' Mot. at 6 (cleaned up).) But the Defendants provide no support, nor is the Court aware of any, for their contention that they can overcome the Government's allegations and evidence supporting jurisdiction through conjecture and argument that those allegations are possibly, maybe, or conceivably somehow untrue. Without more, then, the Court finds the argument wholly unavailing.

Relatedly, the Defendants say that the Government has not established its jurisdiction under § 70502(d)(1)(C) because Marte only made a verbal claim of the vessel's *nationality*, as opposed to its nation of *registry*. (Defs.' Mot. at 7.) And, complain the Defendants, that because § 70502(d)(1)(C) only references when "the master or individual in charge makes a claim of registry," as opposed to nationality, the Government's jurisdictional allegations fail. (*Id.* at 7.) Per the Defendants, "the expression of 'claims of registry' in subsection (d)(1)(c) implies the exclusion of 'claims of nationality'." (*Id.*) Because of that distinction, they urge, a claim of nationality should not be held to be synonymous with a claim of registry. (*Id.*)

While there is some appeal to the Defendants' argument, the Court finds it overlooks a key aspect of the MDLEA: that it "effectively treats the distinction between nationality and registry as irrelevant." *U.S. v. Davila-Reyes*, 23 F.4th 153, 166 (1st Cir. 2022) ("*Davila-Reyes II*"). This interchangeable treatment is

likely a function of the interrelatedness of the two concepts, as illustrated by the very definitions the Defendants rely on, above: a ship's nationality reflects a legal connection between a nation and the ship, permitting that ship to sail under that nation's flag; while registry is the way a nation keeps a record of the ships sailing under that nation's flag. The synonymy of the two terms is perhaps most prominently highlighted in § 70502(e) which jointly defines a "claim of nationality *or* registry" as including any of the following: "possession on board the vessel and production of documents evidencing the vessel's nationality"; "flying its nation's ensign or flag"; or "a verbal claim of nationality *or* registry by the master or individual in charge of the vessel." 46 U.S.C. § 70502(e)(1)–(3) (emphasis added here). "By allowing the act of flying a national flag or the possession of documents of nationality to suffice as a claim to either nationality or registry, the MDLEA effectively treats the distinction between nationality and registry as irrelevant." *Davila-Reyes II*, 23 F.4th at 165–66 (emphasis in original). This equivalency is laid bare in § 70502(d)(1)(C) itself, where the very "rejection of a master's claim of registry is premised on the named country's failure to confirm nationality." *Davila-Reyes II*, 23 F.4th at 166. The Court, therefore, is persuaded that, indeed, "Congress used the term 'claim of registry' in the first part of § 70502(d)(1)(C) to also encompass a 'claim of nationality' -- a common, albeit imprecise, choice of language." *Davila-Reyes II*, 23 F.4th at 166.

## B. Bounds of Customary International Law Under the Felonies Clause

The Defendants also argue that, while the Eleventh Circuit has upheld the constitutionality of the MDLEA on multiple occasions, that court has, nonetheless, not decided whether § 70502(d)(1)(C) accords with any customary international law imbedded in the Felonies Clause. However, as it did in *U.S. v. Waters*, 21-20582-CR, 2022 WL 1224728, at *1 (S.D. Fla. Apr. 26, 2022), the Court finds this argument foreclosed by precedent.

The Constitution grants Congress the authority to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10 (the "Felonies Clause"). Pursuant to this authority, Congress passed the MDLEA, in 1986, making it a federal crime for any person "on board a covered vessel . . . [to] knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." *See* 46 U.S.C. § 70503(a); *see also U.S. v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006). A vessel is a "covered vessel" within the Act if, among others, it is "subject to the jurisdiction of the United States." *See* 46 U.S.C. § 70503(e)(1). In turn, a vessel is subject to the jurisdiction of the United States if, in relevant part, the master of the vessel

makes a claim of registry in a nation and the claimed nation of registry "does not affirmatively and unequivocally assert that the vessel is of its nationality." *See* 46 U.S.C. § 70502(c)(1)(A), (d)(1)(C). Therefore, upon a nation's failure to confirm or deny a particular vessel's claimed nationality, the MDLEA recognizes that vessel as a "vessel without nationality"—or, put differently, stateless—permitting prosecution under U.S. law of any foreign national aboard the vessel.

The Defendants argue that the Felonies Clause is bound by customary international law, which they contend does not recognize § 70502(d)(1)(C)'s definition of a "vessel without nationality." According to the Defendants, under international law, a master's verbal claim of nationality is "prima facie proof" of the vessel's nationality, and such proof cannot be rebutted, for jurisdictional purposes, by a nation's failure to confirm or deny the claim. (Defs.' Mot. at 12.) Therefore, the argument goes, § 70502(d)(1)(C) unconstitutionally grants jurisdiction over foreign vessels that would not be considered stateless under international law.

The Defendants rely almost exclusively on *Davila-Reyes II* which held that § 70502(d)(1)(C) exceeded the bounds of the Felonies Clause. 23 F.4th 153 (1st Cir. 2022). There, prior to withdrawing its opinion, the First Circuit concluded, after a review of various historical sources, that the Felonies Clause only permits punishment of crimes "committed by U.S. nationals or on vessels subject to U.S. jurisdiction *under international law.*" *Id.* at 180 (emphasis added). And, after holding that international law recognizes only two circumstances where a vessel may be deemed stateless ("when the vessel refuses to claim any nationality or when it claims more than one nationality"), the First Circuit held that § 70502(d)(1)(C) "displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry—made in accordance with international law." *Id.* at 184, 187. Therefore, the First Circuit held that § 70502(d)(1)(C) conflicts with international law and exceeds the authority granted in the Felonies Clause. *See id.* at 193.

The First Circuit's conclusion, however, is directly at odds with Eleventh Circuit precedent. The Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause. *See U.S. v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014) ("[W]e have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas."); *U.S. v. Bellaizac-Hurtado*, 700 F.3d 1245, 1257 (11th Cir. 2012) ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.") *Estupinan*, 453 F.3d at 1339 ("[W]e readily hold that the district court

committed no error in failing to *sua sponte* rule that Congress exceeded its authority under the Piracies and Felonies Clause in enacting the MDLEA.").[2]

While it is true, as the Defendants point out, that the Eleventh Circuit has not explicitly addressed the question of whether the Felonies Clause is bound by customary international law and whether the MDLEA's definition of stateless vessel in § 70502(d)(1)(C) exceeds international law, the Eleventh Circuit has held that whether a vessel is stateless under international law is an issue to be settled by the executive branch. *See U.S. v. Hernandez*, 864 F.3d 1292, 1304 (11th Cir. 2017) (holding that the MDLEA provides that "any further jurisdictional complaint over that U.S. prosecution is to be handled by the executive branch, nation-to-nation, in the international arena"). In *Hernandez*, the defendants argued that the vessel at issue did not fall under the MDLEA, as while Guatemala did not confirm or deny that the vessel was of Guatemalan registry, the vessel was actually registered in Guatemala. *Id.* at 1298. But the Eleventh Circuit held that "MDLEA statelessness does not turn on actual statelessness, but rather on the response of the foreign government." *Id.* at 1299. For that reason, the issue of whether the vessel was "stateless under international law at the time of the criminal conduct" was irrelevant for judicial purposes, as Congress provided that the executive branch would handle any jurisdictional complaints. *Id.* at 1304.

Therefore, even assuming that Congress's authority under the Felonies Clause is bound by customary international law, Congress did not exceed those boundaries in the MDLEA, as Congress provided for jurisdictional complaints over stateless vessels to be heard by the executive. *See id.*; *see also U.S. v. Anchundia*, No. 1:21-00223-KD-B, 2022 WL 855561, at *2–3 (S.D. Ala. Mar. 22, 2022) (holding that "the Eleventh Circuit has determined that whether a vessel is stateless under international law is not an issue to be determined by the courts" and declining to follow *Davila-Reyes II*); *cf. Jones v. U.S.*, 137 U.S. 202, 224 (1890) (holding that certain factual jurisdictional determinations may be made by the executive branch).

In any event, again assuming that the Felonies Clause is bound by customary international law, the MDLEA's extraterritoriality is further supported by the protective principle. The protective principle is a well-established rule under international law that "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory

---

[2] The Court does not find the Defendants' argument, that *Campbell* and *Hernandez* do not apply because the parties there presented different arguments, persuasive. In both cases, the Eleventh Circuit applied the Felonies on the High Seas Clause, finding Congress empowered to punish conduct that is nearly identical to the conduct the Government seeks to prosecute in this case. Without more, the Court is bound by the holdings in these cases.

threatens the nation's security or could potentially interfere with the operation of its government functions." *See U.S. v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985). The Eleventh Circuit has repeatedly upheld the MDLEA's extraterritorial reach over foreign vessels under the protective principle. *See Campbell*, 743 F.3d at 810; *U.S. v. Persaud*, 605 F. App'x 791, 795 (11th Cir. 2015) (holding that "universal and protective principles support [the MDLEA's] extraterritorial reach") (citing *Campbell*, 743 F.3d at 810). This provides another basis to find that the MDLEA accords with international law.[3] *See U.S. v. Barros*, No. 21-cr-20438, ECF No. 40 at 13 (S.D. Fla. Apr. 18, 2022) (Bloom, J.) (declining to follow *Davila-Reyes II* and holding that "Congress did not overstep its authority in enacting the MDLEA under the Felonies Clause by violating international law because the protective principle of international law permits MDLEA's conferral of jurisdiction over vessels whose nationality cannot be confirmed").

As the Eleventh Circuit has repeatedly upheld the MDLEA as a valid exercise of power pursuant to the Felonies Clause, in accordance with international law, the Court applies this precedent and rejects the Defendants' facial challenge to the constitutionality of § 70502(d)(1)(C).

### C. Exclusive Economic Zone

The Defendants' further challenge, concerning the interplay between exclusive economic zones and the high seas, also fails to persuade. As noted above, the Felonies Clause only reaches felonies committed on the high seas. *See* U.S. Const. art. I, § 8, cl. 10; *see also Bellaizac-Hurtado*, 700 F.3d at 1257 (noting that "Congress possesses additional constitutional authority to restrict conduct on the high seas," including the Felonies Clause). The high seas are understood as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country." *See U.S. v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) (quoting a regulation now found at 33 C.F.R. § 2.23(c)). In other words, "[o]utside the territorial sea are the high seas." *U.S. v. Louisiana*, 394 U.S. 11, 23 (1969). Territorial seas of a foreign nation generally extend up to twelve nautical miles from the coast. *See McPhee*, 336 F.3d at 1273. The Defendants argue that, as they were intercepted within 200

---

[3] Indeed, the First Circuit originally upheld the constitutionality of the MDLEA and § 70502(d)(1)(C) under the protective principle. *See U.S. v. Davila-Reyes*, 937 F.3d 57, 62 (1st Cir. 2019) (*Davila-Reyes I*) (withdrawn) (holding that the "MDLEA is consistent with the 'protective principle' of international law"). However, that decision was later withdrawn once the panel determined that subsequent circuit case law "diminished the force of this circuit's precedent on the protective principle." *Davila-Reyes II*, 23 F.4th at 157. This Court is not aware of a similar diminishment of the protective principle in the Eleventh Circuit; rather, as explained above, the Eleventh Circuit has frequently cited to the protective principle as a basis for the MDLEA.

nautical miles from shore, and thus within the Dominican Republic's exclusive economic zone, they were not caught on the high seas, and therefore the MDLEA cannot apply to them.

This argument boils down to whether a nation's exclusive economic zone constitutes part of that nation's territorial seas or whether such waters are part of the high seas. The exclusive economic zone—formally created and recognized in 1982 through the United Nations Convention on the Law of the Sea—"is an area beyond and adjacent to the territorial sea" of the subject nation, where that nation has special economic rights relating to the use, study, protection, and exploitation of natural resources. *See* United Nations Convention on the Law of the Sea, Dec. 10, 1982, 21 I.L.M. 1245, 1280, Part V. As this Court has previously recognized, in its *Waters* decision, several courts, including in this district, have readily concluded that a nation's exclusive economic zone remains part of the high seas and does not fall within the territorial waters of that nation. 2022 WL 1224728, *4 (citing *U.S. v. Alfonso*, No. 21-20306-CR, ECF No. 47 at 5–6 & n.2 (S.D. Fla. Nov. 22, 2021) (Altonaga, C.J.) (holding that the defendants were in the high seas when interdicted in the Dominican Republic's exclusive economic zone and collecting cases holding that territorial waters only extend to twelve nautical miles off the coast); *Dilbert v. U.S.*, No. 8:13-CV-2189-T-30MAP, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013) (holding that the petitioner "misinterpret[ed]" the United Nations Convention on the Law of the Sea and applying the "12-nautical-mile definition of territorial waters" as required by *McPhee*); and *U.S. v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) (holding that the exclusive economic zone is "merely part of the high seas where that nation has special economic rights and jurisdiction")).

The Defendants urge the Court to reconsider the conclusions it reached in *Waters*. The Court is not persuaded to do so. Despite the Defendants' philosophical thought exercises—for example, conjecturing that one country's policing of illegal drug running within another country's exclusive economic zones interferes with that country's sovereignty over the natural resources within that zone—*McPhee* remains controlling law. The Court finds inapposite that the Eleventh Circuit, in *McPhee*, was addressing the boundaries of the high seas for the purposes of determining which statutory jurisdictional provision of the MDLEA applied instead of evaluating the bounds of the Felonies on the High Seas Clause. The Eleventh Circuit was clear: a vessel outside the twelve-mile limit of a nation's territorial waters is considered to be "in international waters or at 'high seas.'" *McPhee*, 336 F.3d at 1276. In assessing the issue, the Eleventh Circuit, in *McPhee*, looked to the Code of Federal Regulations' definition of the "high seas" as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign

country." *McPhee*, 336 F.3d at 1273 (quoting what is now 33 C.F.R. § 2.32(c)). That regulatory provision defines "high seas" "[f]or the purposes of 14 U.S.C. 522"—the statute authorizing the Coast Guard's law enforcement power over violations of law of the United States—to specifically "include[] the exclusive economic zones of the United States and other nations, as well as those waters that are seaward of territorial seas of the United States and other nations." 33 C.F.R. § 2.32(c). Accordingly, this Court also holds, as it has before, consistent with the United Nations, *Alfonso*, and *McPhee*, that a nation's exclusive economic zone does not constitute territorial waters but rather remains part of the high seas. Therefore, the Court finds the MDLEA constitutional as-applied in this case, as the Defendants were interdicted while on the high seas and thus subject to criminal jurisdiction in the United States.

### 4. Conclusion

As set forth above, the Court is not persuaded by any of the Defendants' arguments in support of dismissal of the indictment in this case. Accordingly, the Court **denies** the Defendants' motion to dismiss. (**ECF No. 22**.)

**Done and ordered** in Miami, Florida, on September 15, 2022.

_____
Robert N. Scola, Jr.
United States District Judge